BECK LAW OFFICES
Larry Beck
Will Murphy
8884 North Government Way, Suite D
P.O. Box 1390
Hayden, ID 83835-1390
Telephone: (208) 772-4400
Facsimile:  (208) 772-7243
larry@becklawidaho.com
Idaho State Bar No. 3751

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL SOUMAS AND VALERIE SOUMAS, husband and wife,<br><br>          Plaintiffs,<br><br>v.<br><br>KOOTENAI COUNTY, IDAHO, a political subdivision of the State of Idaho; and BEN WOLFINGER, in his official capacity as Sheriff of Kootenai County, Idaho,<br><br>          Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMES NOW** the above entitled Plaintiffs, DANIEL SOUMAS and VALERIE SOUMAS, husband and wife, by and through their attorneys of record, Beck Law Offices, Hayden, Idaho, and hereby allege and complain against DEFENDANTS KOOTENAI COUNTY, IDAHO, and BEN WOLFINGER, in his official capacity as Sheriff of Kootenai County, Idaho, as follows:

COMPLAINT-1

# I.
## PARTIES, JURISDICTION AND VENUE

1. That PLAINTIFFS DANIEL SOUMAS and VALERIE SOUMAS, (hereafter referred to as "Plaintiffs"), at all times material hereto, are husband and wife, and reside in Kootenai County, Idaho. Plaintiff Daniel Soumas, (hereafter referred to as "Plaintiff" and included in "Plaintiffs," was, at all times material hereto, employed by Defendants Kootenai County, and Ben Wolfinger, as a captain in the Kootenai County Sheriff's Office.

2. That DEFENDANT KOOTENAI COUNTY (hereafter included in the term "Defendants") was at all times material hereto, and presently is, a municipal corporation and political subdivision and body politic of the State of Idaho. Among its powers is the power to sue and to be sued. One of its many departments is the Kootenai County Sheriff's Office. (Hereafter referred to as "KCSO").

3. That DEFENDANT BEN WOLFINGER, (hereafter referred to as "Defendant Wolfinger," and also included in the term "Defendants"), is being sued herein in his official capacity as Sheriff of Kootenai County, Idaho. On information and belief, Defendant Wolfinger has, at all times material hereto, resided in Kootenai County, Idaho, and was, and presently is, the duly elected Sheriff of Kootenai County, Idaho.

4. That Plaintiff alleges that, at all times material hereto, Defendants employed Plaintiff as a captain in the KCSO. The employee handbooks for both Defendants provided that Plaintiff could only be terminated from his position of employment for good cause. Said policies and procedures constituted a property interest in Plaintiff's continued employment that is protected by federal and state law.

COMPLAINT-2

5.      That Plaintiffs allege in this Complaint as federal claims, that Defendants, and each of them, violated Plaintiff's federal constitutional rights to not have his property interest in his continued employment altered or revoked without first being provided constitutional notice and opportunity to be heard, and to not have his employment terminated without first affording Plaintiff adequate procedural due process. Plaintiffs further assert a claim for violation of Plaintiff's rights to substantive due process. The federal claims are brought as violations of the Fifth and Fourteenth Amendments to the United States Constitution, and pursuant to 42 USC Section 1983. The Court has subject matter jurisdiction over this matter pursuant to either 28 U.S.C. §1343(a) (3) or 28 U.S.C. § 1331.

6.      That Plaintiffs further alleges state law claims against Defendants, and each of them, for violating Plaintiff's rights protected by the Idaho Protection of Public Employee's Act, Idaho Code Sections 6-2101 et seq., (hereafter referred to as "the IPPEA"); for negligently causing both Plaintiffs to suffer from severe emotional distress; for Plaintiff Valerie Soumas' loss of consortium, companionship and society with Plaintiff; and for Negligent Supervision, Training and Investigation.

7.      That Plaintiffs claims damages herein in excess of the minimum jurisdictional amounts necessary to file a civil complaint in the United States District Court for the District of Idaho.

8.      That all of the wrongful actions and/or omissions which Plaintiffs allege were committed by the Defendants, and each of them, occurred in Kootenai County, State of Idaho.

9.      That Plaintiffs request the Court to invoke ancillary-pendent jurisdiction to adjudicate Plaintiff's state law claims pursuant to 28 USC § 1367, since substantial federal claims

COMPLAINT-3

have been alleged in this Complaint, and both the federal and state law claims derive from a common nucleus of operative facts.

10.    That since the events, acts and omissions giving rise to this Complaint occurred in  Kootenai County, State of Idaho, and because all parties and most fact witnesses reside in northern Idaho, venue of these proceedings is proper in the Federal District Court located in Coeur d'Alene, Idaho.

## II.
## BACKGROUND AND GENERAL ALLEGATIONS

11.    That Plaintiffs hereby incorporate by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs in this Complaint.

12.    That at all times material hereto, Defendants employed Plaintiff pursuant to their ordinances, rules, regulations, and employee policies and procedures manuals, which provided, among other things, that an employee in Plaintiff's position could only be terminated from his/her position of employment for good cause. Defendant Wolfinger had supervisory authority over Plaintiff, and was the *defacto* final decision maker for Defendants over decisions to discipline or terminate KCSO employees.

13.    That said personnel laws, rules, and policies and procedures, constituted a property interest in Plaintiff's position of employment to not discipline or fire him except for good cause, which right is protected by both federal and state law. More specifically, said property interest is protected by the Fifth and Fourteenth Amendments to the United States Constitution.

14.    That Plaintiff was an employee of Defendants in the KCSO for almost thirty years. During that time, Plaintiff performed his job duties in either a satisfactory or exemplary

COMPLAINT-4

manner. Throughout Plaintiff's career, he received standard or above standard job evaluations, was given pay raises, and was promoted several times. The annual evaluations process stopped during Plaintiff's last year of employment, as Defendant Wolfinger announced to the command staff that the KCSO would immediately cease doing annual evaluations on its employees because Defendant Wolfinger felt that it was too hard to fire employees if they had solid or excellent performance evaluations. Therefore the KCSO was to no longer give annual performance evaluations to its employees for the foreseeable future.

15.     That Plaintiff had been promoted up to the rank of captain in the KCSO. His most recent assignment as captain prior to his termination included serving as the Detectives Commander for the KCSO.

16.     That throughout the years of Plaintiff's employment, Defendant Wolfinger had expressed to Plaintiff and others, that he had confidence in Plaintiff's leadership abilities. In fact, approximately 3 years prior to Plaintiff's termination, Defendant Wolfinger asked Plaintiff to take another promotion and assume a major's position. Plaintiff considered the matter and ultimately declined the promotion for a few reasons, one of which was that he would lose his "for cause" employment status if he accepted the major's position. Plaintiff valued his property interest in continued employment greatly, and he did not want to lose the valuable rights that went along with having the constitutionally protected property interest.

17.     That on or about March 8, 2017, Plaintiff was issued a counseling note from his supervisor, Major Robertson, which stated that Plaintiff failed to timely perform employee performance evaluations for some of his division's employees. Plaintiff checked his records and determined that his division was behind in completing some of the evaluations. Plaintiff

COMPLAINT-5

proceeded to correct this matter, and he had completed two of the evaluations within the next week.

18.     That on or about March 16, 2017, Plaintiff received a written warning from Major Robertson regarding his perceived failure to timely process employee training requests. This warning also included three additional allegations that Plaintiff had been untimely in completing various other administrative tasks. The day before receiving the written warning, Plaintiff attended a pre-discipline meeting wherein Robertson appeared to be very angry with Plaintiff. Robertson raised his voice while reviewing the allegations, and when Plaintiff attempted to explain his side of the story, Robertson loudly and rudely cut Plaintiff off, and stated that "Regardless of anything you have to say, you're getting the written evaluation!"

Plaintiff never had the chance to provide an explanation to the charges. When Plaintiff received a copy of the written warning the following day (March 16, 2017), he saw that it also contained very belittling comments regarding Plaintiff's performance as a police administrator. Plaintiff filed a grievance concerning the above mentioned written warning. A few days after filing the grievance, Plaintiff met with Major Robertson and Undersheriff Mattos. After discussing that he felt that he should have been allowed to provide an explanation to the charges against him, Mattos agreed that he should have been allowed to do that, and he then let Plaintiff attach a written explanation of the charges to the actual written warning, which was then placed in Plaintiff's file.

19.     That on May 31, 2017, Plaintiff received a second written warning regarding his alleged mishandling of a minor issue. Plaintiff had considered grieving the matter but didn't receive an actual copy of the May 31st warning until the day before his time to grieve the warning expired. However, in lieu of trying to quickly throw together a rushed grievance

COMPLAINT-6

document, Plaintiff instead submitted a memo expressing his serious concerns that his due process rights had essentially been denied him by the manner and time in which he received a copy of the written warning.

20.     That Plaintiff requested a lunch meeting with Major Robertson to try to ascertain why he was perhaps being targeted by command staff. He had lunch with Major Robertson on June 8, 2017. Major Robertson did advise Plaintiff that he had become aware that both the Sheriff and Undersheriff felt that Plaintiff was a problem employee. Plaintiff explained to Major Robertson that he had done nothing to make them feel this way; that the practice of issuing written warnings on matters that only required, at most, an oral counseling, should, in all fairness, be stopped. He discussed with Robertson that he was a for cause employee, and he wasn't going to just be pushed out of his employment so long as he didn't do anything to give KCSO good cause for his dismissal.

21.     That one of Plaintiff's job duties had entailed his monitoring of KCSO's use of drug asset forfeiture monies. This included his providing advice on whether a proposed expenditure by KCSO of the drug forfeiture monies was an allowable expense under the Department of Justice (DOJ) regulations. Plaintiff also filed KCSO's annual reports with DOJ. Further, from time to time, Plaintiff advised senior command of the monthly forfeiture funds balance, and the amounts that had been expended from those funds. He also prepared letters of instruction to Defendant Kootenai County's Auditor, concerning the proper payment of the expenditures.

22.     That since about March 2017, Plaintiff began to notice incidents of his not being consulted on asset forfeiture purchases. He also wasn't being asked to write letters of instruction on projects approved by senior command staff. Plaintiff mentioned to supervisors on a few

COMPLAINT-7

occasions that he should be consulted on the proper and legal use of the asset forfeiture expenditures the KCSO planned on making. Plaintiff was simply ignored when he made these requests.

23.     That on or about June 1, 2017, Plaintiff received an email from Undersheriff Dan Mattos that advised him that the KCSO had decided that they would like to expend $30,000 from the forfeiture funds to hire an individual at the Child Advocacy Center. The email stated that it was "Just an FYI as you oversee the account."

24.     That Plaintiff immediately understood that the above transaction was likely in violation of DOJ regulations, as it was for more than the $25,000 cap, and also was to be used to pay a "salary," which was prohibited by DOJ regulations. Plaintiff was genuinely concerned that this transaction was going to place Defendant Kootenai County and the KCSO in legal jeopardy.

25.     That Plaintiff emailed Mattos back and warned him that the transaction may not be a legal use of forfeiture funds. Mattos responded by stating that the transaction had been vetted by KCSO's attorney. Plaintiff then contacted the attorney and pointed out some of DOJ's regulations and guidelines that the attorney acknowledged he had not been aware of. He told Plaintiff that he would send an email to Defendant Wolfinger and Undersheriff Mattos.

26.     That Undersheriff Mattos then sent an email to Plaintiff to advise him that the county attorney is the only person who is to discuss the matter with DOJ. The email then stated "I don't want too many cooks in the kitchen." Plaintiff understood that senior command staff was not happy with him for contacting the county attorney to discuss the matter, and that they further intended to keep him out of the loop.

27.     That Plaintiff emailed Undersheriff Mattos back and advised he was sorry for discussing the matter with the county attorney, that he felt it was part of his job duties, and that

COMPLAINT-8

he thought the department would continue to want his input on potential forfeiture fund expenditures. Mattos wrote back by stating "Enough said." He also informed Plaintiff that he had been satisfied with the county attorney's initial decision, but in light of Plaintiff's insight, the decision to go to DOJ was appropriate. Plaintiff understood that this message was essentially telling him that he should have stayed out of the entire matter, and that Defendant Wolfinger and Mattos were very unhappy with Plaintiff for raising the likely illegality of the expenditure.

28.     That two days later, on June 8, 2017, Plaintiff had a meeting with Major Robertson to discuss his relationship with the senior command staff, and Robertson told Plaintiff that Undersheriff Mattos told Robertson that Plaintiff was an "obstructionist," and "He better get onboard or he would be gone from the KCSO!"  Again, Plaintiff had told Robertson at that meeting that he was not going to be pushed out of his career and that he expected that he would receive full due process if any such move was made by senior command to terminate him.

29.     That on June 21, 2017, Defendant Wolfinger met Plaintiff in his office, and, without taking a seat, handed Plaintiff a piece of paper and told him to read and sign the document right then and there. The document stated that:

> Effective immediately, notice is hereby given that all deputies at the rank of Captain are hereby employed at the will of the Sheriff. This notice supersedes and replaces any and all policies and procedures at the Kootenai County Sheriff's Office that provided that your employment may only be terminate [sic] for cause."

Plaintiff was ordered by Defendant Wolfinger to sign an acknowledgement on the document, stating that he had received the notice. Fearing that he would be immediately terminated if he didn't sign the document right then and there, Plaintiff signed the document.

COMPLAINT-9

30.     That Plaintiff had received no prior notice whatsoever that the Defendants were intending to revoke the captains' "for cause" employment status, and make them "at-will" employees. There were only three captains at the KCSO, of which Plaintiff was one of the three.

Plaintiff had not been provided notice of any opportunity to be heard on a contemplated policy change, and therefore never had an opportunity to be heard before his employment status had been altered. In fact, the first time he was advised of the new policy was when Defendant Wolfinger met with him in his office and demanded that he sign the acknowledgment.

31.     That Plaintiff continued to perform his duties in either an exemplary or satisfactory manner.

32.     That on or about August 11, 2017, Plaintiff met with Major Robertson and was advised that Plaintiff would likely be hearing about a rumor that was circulating in patrol that Defendant Wolfinger and Undersheriff Mattos were planning to force Plaintiff out of his position now that he was an at-will employee, so that Major Robertson could take Plaintiff's position as part of a re-organization. Robertson told Plaintiff that the rumor was not true in any way, that he would absolutely not be forced out of his position, and he should not take the rumor seriously.

33.     That less than one week later, Plaintiff was called to a meeting with Undersheriff Mattos that took place at a local restaurant. He told Plaintiff that the rumor of his being forced out, which allegedly came from the Defendant Wolfinger, was completely untrue. He did tell Plaintiff that he and both defendants discussed having Plaintiff leave the department, but that it would be as a buy-out proposal, and nothing more than that. Plaintiff discussed with Mattos some of the details on how such a buy-out would very negatively affect Plaintiff's retirement plan for the future. After discussing this situation, Mattos told Plaintiff that if he was offered a buy-out, it would be entirely his choice if he wanted to take it and early retire, and that under no

COMPLAINT-10

conditions would Plaintiff be terminated from his employment to make the proposed re-organization work.

34.     That during the above meeting, Plaintiff told Mattos that because of the earlier written discipline he had received (on what Plaintiff perceived as matters that did not come close to warranting written discipline); and the rumors that Plaintiff would be terminated by Defendants to make a proposed re-organization plan work; and the fact that the Defendants had altered Plaintiff's employment status to "at-will" without any notice or discussion, Plaintiff told Mattos that he was greatly concerned that Defendants were intending to terminate his employment. Plaintiff described to Mattos how this situation had created tremendous anxiety and stress for both he and his wife.

35.     That on or about August 22, 2017, Plaintiff met with some of the members of the command staff to discuss a potential re-organization and potential buy-outs. In this meeting Defendant Wolfinger assured all of those present that, under no conditions, would any of the captains be forced out of their positions to make the proposed re-organization work. After Defendant Wolfinger presented the proposed buy-out offers to the officers, Plaintiff informed him that there wasn't any way that he could agree to take the proposed buy-out as it would have a devastating impact on his family's finances.

36.     That a mere six days after Plaintiff told Defendant Wolfinger that he could not accept the proposed buy-out proposal, Plaintiff was told that he was now the subject of a new internal investigation. This investigation was conducted by Major Edmondson, and it dealt with Plaintiff's timeliness in responding to a complicated and involved public records request from an outside agency. During the investigation, Plaintiff asked for the investigative rights he was entitled to under the KCSO manual, and Edmondson advised him that since he was now an at-

COMPLAINT-11

will employee, he wasn't entitled to the procedures set forth in the manual, or any due process rights at all.

37.     That on or about September 1, 2017, Plaintiff received a department-wide email from Defendant Wolfinger discussing some changes regarding the proposed re-organization plan. He stated in the email that an additional captain's position would be added to the proposed reorganization plan. The obvious implication was that now only one captain's position would need to be bought out.

38.     That on or about September 25, 2017, Plaintiff was advised by telephone that he was to meet with Defendant Wolfinger the following morning. The following morning, Plaintiff went to Defendant Wolfinger's office and he met with him and Undersheriff Mattos. While reading from a prepared script, Defendant Wolfinger told Plaintiff that he had done a review of Plaintiff's entire personnel file, and he determined that since the year 2000, Plaintiff had issues with completing administrative work in a timely manner. He told Plaintiff that his conclusion that Plaintiff had recently failed to timely respond to the outside agency's voluminous public records request, and this was the "last straw" that led to his decision to terminate him.

He then gave Plaintiff two options. He could choose to be terminated immediately and not receive his badge, gun and ID, or he could be placed on administrative leave and retire effective October 31, 2017. To choose the second option, Plaintiff would be required to sign a release agreement that would release the Defendants and their employees from any liability whatsoever for Plaintiff's separation of employment and any other employment related claims, and the terms of Plaintiff's retirement were required to be kept strictly confidential.

39.     That at no time prior to the termination meeting, or at any time during the termination meeting, did any of the Defendants provide Plaintiff with a copy of the investigation

COMPLAINT-12

findings, or the investigator's final recommendation concerning Plaintiff's alleged failure to timely complete the public records request for the outside agency. In fact, Plaintiff had timely completed the public records request. Plaintiff requested additional time to make a decision on the two options that had just been presented to him. Defendant Wolfinger stated he could have an additional two hours, until 12:00 noon. As Plaintiff was leaving the meeting, Undersheriff Mattos stated " Hey Dan, is your office ready for Major Robertson to take over?"

40.     Plaintiff informed Defendant Wolfinger by noon on that same day, that he could not accept option two as provided to him during the meeting, and that he understood that he was therefore immediately terminated from his employment.

41.     Thereafter, Plaintiff, through his attorney, provided the Defendants and their lawyer with a written demand for due process and an evidentiary hearing. Plaintiff's lawyer also requested the reasons, and the real reasons, for Plaintiff's termination. Plaintiff's attorney also provided Defendants with an evidence preservation letter.

42.      That Defendants' lawyer responded with a letter to Plaintiff's lawyer, stating that Plaintiff was not entitled to an evidentiary due process hearing, or any other due process, since Plaintiff was an at-will employee at the time of his termination.

43.     That following all of Defendants' actions and omissions against Plaintiff, as described above, both Plaintiffs have suffered from, and continue to suffer from, general and special damages including severe emotional distress and great economic loss.

COMPLAINT-13

# III.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Violation of Procedural Due Process - 42 U.S.C. § 1983**
Fifth and Fourteenth Amendments to the United States Constitution
***Against All Defendants***

44.     That Plaintiff hereby incorporates by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs in this Complaint.

45.     That at all times material hereto, Defendants, and each of them, employed Plaintiff pursuant to their respective personnel policies and procedures, which provided, among other things, that a sworn KCSO employee can only be terminated from his/her position of employment for good cause. This constituted an official policy and custom of Defendants, and each of them.

46.     That the personnel rules, policies, and procedures contained in Defendants respective employee manuals, constituted an employment contract under Idaho law between Plaintiff and Defendants, and also vested Plaintiff with a property interest in his position of employment with Defendants, which is protected by the Fifth and Fourteenth Amendments to the United States Constitution.

47.     That neither of the Defendants could deprive Plaintiff of his property interest in his continued employment without first providing Plaintiff with constitutionally adequate due process of law, as mandated by the Fifth and Fourteenth Amendments to the United States Constitution.

COMPLAINT-14

48.      That at all times material hereto, it had been the official custom and practice of Defendants to terminate the employment of its regular employees working in the KCSO, only if good cause existed to justify the termination.

49.      That at all times material hereto, Defendants, and each of them, failed to provide Plaintiff with reasonable notice that they were contemplating altering his employment status from for cause to at-will, <u>before</u> they actually implemented said policy change.

50.      That at all times material hereto, Defendants, and each of them, failed to provide Plaintiff with an opportunity to be heard on any contemplated alteration of his employment status from for cause to at-will, at a reasonable time, place and manner, <u>before</u> they actually implemented said policy change.

51.      That at all times material hereto, Defendants, and each of them, failed to provide for adequate due process to be provided to sworn KCSO employees, including providing employees targeted for termination with pre-termination notice, pre-termination hearings, and post termination hearings.

52.      That at all times material hereto, Defendants had a policy, practice and custom of allowing Defendant Wolfinger to be the final decision making authority over employment discipline and termination decisions for KCSO employees.

53.      That at all times material hereto, Defendants failed to adopt official policies, customs and practices that were necessary to prevent procedural due process violations from occurring.

54.      That Plaintiff's right to procedural due process of law was violated by Defendants when they:

COMPLAINT-15

a. Wrongfully deprived Plaintiff of his property right of "for cause" employment, without <u>first</u> providing Plaintiff with constitutionally mandated due process, including reasonable notice and an opportunity to be heard.

b. Trumped up allegations of misconduct to attempt to make their planned re-organization plan work to the Defendants' satisfaction.

c. Refused to provide Plaintiff with notice and a pre-termination hearing <u>before</u> the decision to terminate his employment was made.

d. Refused to provide Plaintiff with a post-termination hearing to try to cure the fact that they denied Plaintiff any type of pre-termination hearing.

e. Allowed Defendant Wolfinger to serve as the neutral and impartial decision maker concerning the final termination meeting, in the face of clear evidence of his actual and apparent bias towards Plaintiff.

55.     That the actions and omissions of Defendants violated Plaintiff's rights to procedural due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. These violations are actionable under Title 42 of the United States Code, particularly Section 1983.

56.     That because Plaintiff had a constitutionally protected property interest in his continued employment, Defendants, and each of them, had a duty to protect the constitutional due process rights of regular KCSO employees when considering whether to either alter their 'for cause' employment status, or to terminate the employment of such employees. This duty included the need to receive adequate training on how to protect the constitutional rights of regular county employees working in the KCSO.

COMPLAINT-16

57.     That the need for adequate training was obvious in order to insure that the constitutional due process rights of regular employees in KCSO were not violated.

58.     That Defendants' failure to adequately train their supervisors and agents on how to insure that the constitutional due process rights of regular employees in the KCSO were not violated, amounted to deliberate indifference to the constitutional rights of those officers.

59.     That the actions and omissions of Defendants, and each of them, in causing violations of Plaintiff's constitutional rights to due process of law were the obvious consequence of their failure to provide specific and adequate training.

60.     That Defendants' failure to provide adequate training, violated Plaintiff's rights pursuant to the Fifth and Fourteenth Amendments to the U.S. Constitution, made actionable through Title 42 of the United States Code, Section 1983.

61.     That the final decision to terminate Plaintiff's employment was made by Defendant Wolfinger in his official capacity as the *defacto* final decision maker for Defendant Kootenai County for personnel matters in the Sheriff's Office, and pursuant to Defendants' official policies, customs and practices. The final personnel decisions made by Defendant Wolfinger were ratified by Defendant Kootenai County.

62.     That as a result of the actions and inactions of Defendants, and each of them, Plaintiff has incurred damages in the form of past and future back pay, front pay, severe emotional distress, medical and mental health care expenses, loss of the employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and case costs, loss of usual activities, loss of reputation and loss of career track damages, and punitive damages against Defendant Wolfinger, all in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.

COMPLAINT-17

## SECOND CLAIM FOR RELIEF

**Violation of Substantive Due Process – Liberty Interest-42 U.S.C. § 1983**
Fifth and Fourteenth Amendments to the United States Constitution-
***Against All Defendants.***

63.     That Plaintiff hereby incorporates by reference, as though fully set forth herein,

all of the allegations contained in the above paragraphs in this Complaint.

64.     That the above stated actions and omissions of Defendants violated Plaintiff's

constitutionally protected occupational liberty interest to be free to pursue the occupation of his

own choosing.

65.     That Defendants acted arbitrarily and capriciously in their investigation of any of

the accusations made against Plaintiff in 2017, and further acted arbitrarily and capriciously in

sustaining those accusations and in terminating Plaintiff's employment.

66.     That based on Defendants' arbitrary and capricious investigation, and their

sustaining of the accusations against Plaintiff, and in ultimately terminating Plaintiff's

employment, Plaintiff has been branded with the stigma of being an officer who is

untrustworthy, irresponsible, incompetent, and has a long and continuous pattern of failing to

complete work assignments on time, and has a long pattern of behavior of failing to take

responsibility for mistakes. As a consequence of Defendants' outrageous, arbitrary and

capricious actions, Plaintiff is now foreclosed from finding work in his chosen profession.

67.     That Plaintiff's being foreclosed from continuing in his chosen profession is an

extreme result which has stemmed from the arbitrary and capricious actions of Defendants, and

each of them.

COMPLAINT-18

68.     That the arbitrary and capricious actions of Defendants, and each of them, violated Plaintiff's occupational liberty interest protected by the Fifth and Fourteenth Amendments to the U.S. Constitution, and actionable pursuant to Title 42 of the United States Code, Section 1983.

69.     That the personnel decisions made by Defendants, and particularly by Defendant Wolfinger as the *defacto* final decision maker for Defendant Kootenai County for KCSO employees, were made in their official capacity as the final decision makers for personnel matters. Said decisions constituted an arbitrary and capricious discharge of Plaintiff's position of employment.

70.     That as a result of the actions and inactions of Defendants, and each of them, Plaintiff has incurred damages in the form of past and future back pay, front pay, severe emotional distress, medical and mental health care expenses, loss of the employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and case costs, loss of usual activities, loss of reputation and loss of career track damages, and punitive damages against Defendant Wolfinger, all in amounts to be proven at trial, but which exceed the minimum jurisdictional limits of the District Court.


### THIRD CLAIM FOR RELIEF

**State Law Whistleblower Claim**
Violation of Idaho Protection of Public Employee's Act,
Idaho Code Sections 6-2101 et seq.
***Against ALL Defendants***

71.     That Plaintiff hereby incorporates by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs to this Complaint.

COMPLAINT-19

72.     That following Plaintiff's contacts with the Defendants' attorney, and Undersheriff Mattos regarding his legitimate concerns that Defendants would be breaking a law, rule or regulation of the federal Department of Justice by expending drug forfeiture funds on a disallowed purpose, and in a disallowed amount over the federal cap, Defendants, and each of them, began a series of events that ultimately led to the stripping of Plaintiff's property right to for cause employment status, without due process of law, and ultimately led to Plaintiff's termination from employment, again, without due process of law.

73.     That Plaintiff communicated to Undersheriff Mattos, and the county attorney, his good faith belief that the proposed county expenditure of drug forfeiture funds violated, or Plaintiff suspected it violated, a law, rule or regulation of the United States.

74.     That Plaintiff's communications to Undersheriff Mattos, and the county attorney, were made by Plaintiff in a time and manner that gave the Defendants the opportunity to correct any illegal activity or suspected illegal activity.

75.     That at the time that Plaintiff made the above reference communications, there existed a reasonable basis in fact for the communications.

76.     That a few days after Plaintiff made said communications, he learned that senior command staff employees were upset with him for making said communications.

77.     That less than 14 days after learning that senior command staff was upset with him following the said communications, Defendant Wolfinger, stripped Plaintiff of his property right to for cause employment, without first providing Plaintiff with due process of law. Plaintiff believes that a major reason for the above adverse action, if not the only reason, was that Plaintiff made said communications of illegal or suspected illegal activity.

COMPLAINT-20

78.     That shortly after being stripped of his for cause employment status, Defendants engaged in a series of actions against Plaintiff that ultimately led to Plaintiff's termination of employment, without due process of law, and without good cause. Plaintiff believes that a major reason for the above adverse action, if not the only reason, was that Plaintiff made said communications of illegal or suspected illegal activity.

79.     That as a result of the actions and omissions of the Defendants, and each of them, Plaintiff has incurred damages in the form of past and future back pay, front pay, severe emotional distress, medical and mental health care expenses, loss of the employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and case costs, loss of usual activities, loss of reputation and loss of career track damages, and punitive damages against Defendant Wolfinger, all in amounts to be proven at trial, but which exceed the minimum jurisdictional limits of the District Court.

## <u>FOURTH CLAIM FOR RELIEF</u>

### State Law Negligent Supervision, Training and Investigation
### *Against Defendant Kootenai County*

80.     That Plaintiff hereby incorporates by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs to this Complaint.

81.     That Defendant Kootenai County owed a duty to Plaintiff to exercise due care to adequately and properly train supervisory employees, and its board of county commissioners, to prevent employees from being terminated from their positions of employment without good cause, and to prevent employees and agents from interfering with an employee's contract of employment.

COMPLAINT-21

82.     That Defendant Kootenai County failed to properly and adequately train supervisory employees, and members of the board of county commissioners, on how to prevent employees from being terminated from their positions of employment without good cause.

83.     That Defendant Kootenai County's breach of said duties listed above, and each of them, proximately caused Plaintiff's employment to be terminated without "good cause."

84.     That as a result of the actions and inactions of Defendant Kootenai County, Plaintiff has incurred damages in the form of past and future back pay, front pay, severe emotional distress, medical and mental health care expenses, loss of the employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and case costs, loss of usual activities, loss of reputation and loss of career track damages, all in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.


## FIFTH CLAIM FOR RELIEF

### State Law Negligent Infliction of Emotional Distress
### *Against Defendant Kootenai County*

85.     That Plaintiff hereby incorporates by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs to this Complaint.

86.     That Defendant Kootenai County had a duty to not cause Plaintiff to suffer from unwarranted emotional distress by terminating his employment without good cause.

87.     That Defendant Kootenai County breached said duties to Plaintiff.

88.     That the above stated actions and inactions of Defendant Kootenai County proximately caused Plaintiff to suffer emotional distress.

COMPLAINT-22

90.     That Plaintiff's emotional distress has resulted in serious physical manifestations.

91.     That as a result of the actions and inactions of Defendant Kootenai County, Plaintiff has incurred damages in the form of past and future back pay, front pay, severe emotional distress, medical and mental health care expenses, loss of the employee benefit package attendant to his position of employment, including health and retirement benefits, out of pocket costs, attorney's fees and case costs, loss of usual activities, loss of reputation and loss of career track damages, all in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.

## SIXTH CLAIM FOR RELIEF

**State Law Loss of Consortium, Comfort and Society**
*Against All Defendants.*

92.     That Plaintiffs hereby incorporate by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs to this Complaint.

93.     That Defendants, and each of them, had a duty to not cause Plaintiff to suffer from unwarranted emotional distress by stripping him of his property right to for cause employment; in terminating him without good cause and without procedural due process, and in violation of the IPPEA.

94.     That Defendants, and each of them, breached said duties owed to Plaintiff.

95.     That the above stated actions and inactions of Defendants, and each of them, proximately caused Plaintiff to suffer from severe emotional distress.

96.     That Plaintiff's emotional distress has resulted in serious physical manifestations.

97.     That as a result of the actions and inactions of Defendants, and each of them, Plaintiff Valerie Soumas has suffered from a past and future loss of companionship, love,

COMPLAINT-23

affection, services, society and consortium with and from Plaintiff, in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against both Defendants, and each of them, for all causes of action, as follows:

1.      For an award of compensatory damages sufficient to compensate Plaintiff for back-pay as a result of his wrongful termination of employment, the exact amount of which has not yet been presently ascertained, but which will be proven at trial, and which is in excess of the minimum jurisdictional limits of the District Court.

2.      For an award of compensatory damages sufficient to compensate Plaintiff for his future loss of income (front-pay) to be incurred by Plaintiff as a result of his having been wrongfully terminated from his employment, the exact amount of which cannot presently be ascertained, but which will be proven at trial, and which is in excess of the minimum jurisdictional amount of the District Court;

3.      For an award of compensatory damages in an amount sufficient to compensate Plaintiff for his loss of benefits attendant to his position of employment with Defendants, including health and retirement benefits, as a result of his having been wrongfully terminated from his employment, the exact amount of which cannot be presently ascertained, but which will be proven at trial, and which is in excess of the minimum jurisdictional amount of the District Court;

4.      For an award of compensatory damages in an amount sufficient to compensate Plaintiff for the severe emotional distress which he has suffered and continues to suffer, including compensation for his past and future medical and mental health care expenses, that

COMPLAINT-24

were negligently caused by Defendants, the exact amount of which cannot be presently ascertained, but will be proven at trial, and is in excess of the minimum jurisdictional amount of the District Court;

5.      For an award of damages in an amount sufficient to compensate Plaintiff for his loss of career track, loss of usual activities, and loss of reputation, caused by the wrongful termination of his employment, the exact amount of which cannot be presently ascertained, but will be proven at trial, and is in excess of the minimum jurisdictional amount of the District Court;

6.      For an award of damages in an amount sufficient to compensate Plaintiff Valerie Soumas for her past and future loss of companionship, love, affection, services, society and consortium with and from Plaintiff Daniel Soumas, in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.

7.      For an award of damages in an amount sufficient to compensate Plaintiff for his costs and reasonable attorney fees incurred herein;

8.      For such other and further relief as the Court deems just in the premises.

**A JURY TRIAL IS HEREBY DEMANDED AS TO ALL ISSUES.**

DATED this 23rd Day of March, 2018

**BECK LAW OFFICES**


BY:   _____/S/_____
                          Larry Beck
                          Attorney at Law



COMPLAINT-25